IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                                    Criminal No. ELH-94-0010

NATHANIEL DAWSON, SR.
*Defendants*.

**MEMORANDUM OPINION**

Nathaniel Dawson, Sr., who is now 85 years old and serving two life sentences, has filed a motion, through counsel, seeking compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 351 ("Motion").

On November 9, 1994, a jury in the District of Maryland convicted Dawson of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count One); conspiracy to kill a government witness, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1512(a)(1)(A),(C) (Count Three); murder to prevent the attendance or testimony of a person in an official proceeding, in violation of 18 U.S.C. § 1512(a)(1)(A) (Count Four); and murder to prevent the communication of a person with law enforcement officials, in violation of 18 U.S.C. § 1512(a)(1)(C) (Count Five).

At the trial, at which Judge William Nickerson presided,[1] the government presented evidence that Dawson killed Latisha Murphy by shooting her twice in the head. Murphy was a civilian witness in the prosecution of Dawson's son, Nathaniel Dawson, Jr. ("Dawson, Jr."). At the time of Murphy's death, Dawson, Jr. was under investigation for his involvement in a shootout

_____

[1] The case was reassigned to me on or about July 8, 2020, due to Judge Nickerson's retirement. *See* Docket.

on a Baltimore street that resulted in the death of a young child who was playing outside when the shootout occurred.

As exhibits to the Motion, Dawson submitted 49 pages of his medical records (ECF 351-1); an annotated copy of a document compiling the text of recent amendments to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") (ECF 351-2); and a letter from an acquaintance of Dawson, attesting to Dawson's good character.  ECF 351-3.  Dawson has also filed a "Notice of Supplemental Authority" (ECF 364) and a motion to expedite the Court's consideration of the Motion.  ECF 365 ("Motion to Expedite").  In addition, he has submitted more recent medical records (ECF 381, "Notice of Supplemental Documentation") and an "Updated Release Plan."  ECF 407; ECF 407-1 ("Release Plan").

The government opposes the Motion.  ECF 361.  Dawson has replied.  ECF 363.

A hearing was held on the Motion on June 12, 2024, at which argument was presented.[2]  For the reasons that follow, I shall grant the Motion.  And, I shall deny, as moot, the Motion to Expedite.  ECF 365.

## I.      Background[3]

Eight defendants were charged in the case.  The defendant ("Dawson" or "Dawson, Sr."), is the father of codefendant Dawson, Jr.

At least as of 1991, Dawson, Jr. was the leader of a cocaine trafficking organization in Baltimore. *United States v. Dawson*, *et al.*, 141 F.3d 1160 (table), 1998 WL 188636, at *1 (4th

---

[2] The parties agreed that it was not necessary for defendant to appear at the hearing.  *See* ECF 371; ECF 374.

[3] Because of the age of the case, many of the pleadings are not available on the electronic docket.  The first docket entry, a "Second Superseding Indictment as to a John Doe" defendant, is dated June 2, 1994.  ECF 1.  It was not until 2011 that filings in the case became consistently available electronically.

Cir. April 21, 1998) (per curiam).  Dawson, Jr. occasionally visited drug sales locations to oversee the sellers in his organization.  *Id.*

On November 4, 1993, Dawson, Jr. and two bodyguards were overseeing drug sellers when a car drove towards them.  *Id.*  Codefendant Eric Drayton was one of the bodyguards.  One of Dawson, Jr.'s bodyguards approached the car, "[w]ords were exchanged and Dawson [Jr.] drew his firearm, prompting [the bodyguards] to do likewise."  *Id.*  The bodyguards "then began firing their weapons, intending to kill the occupants of the vehicle."  *Id.*  Instead, "a stray bullet struck and killed" ten-year-old Tauris Johnson, who had been playing football.  *Id.*

After the shooting, Dawson, Jr., the bodyguards, and others fled to New York City.  *Id.* Dawson, Jr. was apprehended on December 8, 1993.  *See* Brief of Government, *United States v. Dawson*, 1996 WL 33454096, at *3 (4th Cir. Nov. 13, 1996) ("Gov't. Brief").  He "was returned to Baltimore in mid-December [of 1993], indicted on state charges, and incarcerated pending trial." *Dawson*, 1998 WL 188636, at *2.  "Shortly thereafter, Dawson [Jr.] contacted former bodyguard Gregory Lyons and asked him to 'take care of the witnesses' again Dawson [Jr.]."  *Id.*  Lyons, also a defendant, "declined the request."  *Id.*

Dawson, Sr. then contacted Sean Kirkland, who was Dawson, Jr.'s "chief lieutenant" in the drug trafficking organization.  *Id.* at *1.  Kirkland was also a defendant in the federal case.[4] "Dawson, Sr. showed Kirkland the indictment [against Dawson, Jr.] and stated that he was going to kill all of the witnesses against Dawson [Jr.]."  *Id.* at *2.

On January 13, 1994, Latisha Murphy "testified before a federal grand jury investigating Tauris Johnson's homicide and the drug related activities of Dawson Jr. and others."  Gov't. Brief

---

[4] According to the Second Superseding Indictment, Kirkland used the aliases "Shawn Kirkland," "Shawn Kemp," and "Seth Webb."  *See, e.g.,* ECF 35 at 1.

at *3.  Kirkland subsequently identified Murphy to Dawson, Sr.  *Dawson*, 1998 WL 188636 at *2.

Soon after, on February 12, 1994, Dawson, Sr. shot Murphy twice in the head, killing her.  *Id.*;

Gov't. Brief at *3.

On June 2, 1994, a grand jury in the District of Maryland returned a Second Superseding

Indictment ("Indictment") charging Dawson, Sr. and others with conspiracy to distribute and

possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count One); conspiracy

to kill a government witness (Murphy), in violation of 18 U.S.C. § 371 (Count Three); killing to

prevent the testimony of a person (Murphy) at an official proceeding, in violation of 18 U.S.C. §

1512(a)(1)(A) (Count Four); and killing to prevent the communication of a person (Murphy) with

law enforcement officials, in violation of 18 U.S.C. § 1512(a)(1)(C) (Count Five).  ECF 35[5]; *see*

*also* Gov't. Brief at **3–4.[6]

Dawson, Sr., Dawson, Jr., and two others proceeded to trial beginning on October 4, 1994.

ECF 368 ("Presentence Report" or "PSR"), ¶ 1; Gov't Brief at *4.  As noted, Judge Nickerson

presided.  The defendants were found guilty of all charges.  Gov't. Brief at *5. [7]

_____

[5] I located a copy of the Second Superseding Indictment (ECF 35), Dawson's presentence
report (ECF 368), and his judgment of conviction (ECF 167) in the Chambers file of Judge
Nickerson.  I also obtained a copy of the sentencing transcript from the National Archives and
Records Administration.  *See* ECF 372.  Although the Second Superseding Indictment and the
judgment had previously been assigned an electronic docket number, these documents were not
accessible on the electronic docket.  Moreover, the sentencing transcript and the presentence report
were not filed.  Accordingly, on May 7, 2024, I submitted the Second Superseding Indictment
(ECF 35), presentence report (ECF 368), and judgment (ECF 167) for electronic docketing.  And,
on May 9, 2024, I submitted the sentencing transcript (ECF 372) for docketing.  *See* ECF 373.

[6] Dawson, Jr. and Kirkland were also charged with the intentional killing of another, *i.e.*,
Tauris Johnson, while engaging in an offense punishable under 21 U.S.C. § 841(b)(1)(A).

[7] Beverly Brown was also a defendant in the case.  ECF 368 at 1(b).  Brown, who was
"Dawson [Jr.'s] girlfriend, assisted Dawson [Jr.] in delivering cocaine and firearms to various stash
houses near locations where the drugs were sold."  *Dawson*, 1998 WL 188636, at *1.  She was
convicted of Count One, which alleged a drug conspiracy.  ECF 35 at 1; ECF 357.  As noted,

A PSR for Dawson, Sr. was prepared.  ECF 368.[8] The PSR stated that Dawson's convictions on Counts One and Two were "grouped together" for purposes of determining his offense level, "because the murder of Tauris Johnson in Count II [was] directly related to the Dawson, Jr. drug operation and the 'turf battle' . . . to sustain the drug distribution operation which is charged in Count I." *Id.* ¶ 9.[9]  And, the PSR indicated that "Counts III, IV, and V [were] grouped together because they each involve[d] the same victim, Government witness Leticia [sic] Murphy." *Id.* ¶ 10.

With respect to the practice of "grouping," the PSR explained:  "Section 3D1.3(a) [of the 1994 Guidelines] states[:] 'In the case of counts grouped together pursuant to [§] 3D1.2((a–c)), the offense level applicable to a Group is the offense level . . . for the most serious of the counts comprising the Group, i.e. the highest offense level of the counts in the Group.'" *Id.* ¶ 11 (quoting U.S.S.G. § 3D1.3(a) (1994)).

Group One "involve[d] the drug distribution conspiracy and the murder of Tauris Johnson." ECF 368, ¶ 12.  With respect to Group One, the PSR explained:  "The appropriate guideline for a

---

Kirkland was "Dawson [Jr.'s] chief lieutenant."  *Dawson*, 1998 WL 188636, at *1.  He was convicted of Counts One, Two, Three, Four, and Five.  ECF 357.

Counts One and Two of the Indictment also named three "John Doe" defendants.  ECF 35 at 1, 6.  One "John Doe" defendant, later identified as Gregory Lyons, pleaded guilty to Count One.  ECF 368 at 1(b).  At the time, the prosecution of a second "John Doe" defendant, known as "Uptown," was pending.  *Id.*  The third "John Doe" defendant was, at the time, a fugitive.  *Id.*

[8] The copy of the Presentence Report that I located in Judge Nickerson's Chambers file contains handwritten annotations.  *See, e.g.,* ECF 368, ¶ 20.  Presumably, they were made by Judge Nickerson.

[9] In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court severed and excised the provision of the federal sentencing statute that made the Guidelines binding on sentencing judges.  *Id.* at 245.  However, at the time Dawson, Sr. was sentenced, the Guidelines were mandatory.

violation of 21:USC:846 is 2D1.1[;] however, since a victim was killed under circumstances that would constitute murder under 18:USC:1111, [§] 2D1.1(d) cross-references Count I to [§] 2A1.1." *Id.* ¶ 13.  Section 2A1.1 of the Guidelines prescribed an offense level of 43.  U.S.S.G. § 2A1.1(a) (1994));  *see* ECF 368, ¶ 13.

The counts in Group Two "involve[d] the murder of federal witness Leticia [sic] Murphy." *Id.* ¶ 19.  With respect to Group Two, the PSR explained that the applicable guideline was "Section 2A1.1 of the guidelines," which "provide[d] that offenses involving the murder of a federal witness have a base offense level of 43."  *Id.* ¶ 20.  However, the PSR noted that, because the "statutory mandatory minimum penalty for a violation of 18:USC:1111 is life imprisonment . . . any technical application of the guidelines would be over-ridden by a life sentence."  *Id.*

The PSR determined that the base offense level with respect to both "Group One," comprising Counts One and Two, and "Group Two," comprising Counts Three, Four, and Five, was 43.  *Id.*, ¶¶ 13,18.  Furthermore, the PSR determined that, pursuant to U.S.S.G. § 3D1.4(a), Dawson's offense level was subject to a two-point increase.  *Id.* ¶ 31.  Therefore, the PSR stated that Dawson had a total offense level of 45.  *Id.* ¶ 33.[10]

With respect to defendant's criminal history, the PSR indicated that Dawson had committed several prior offenses that did not score points.  *Id.* ¶¶ 35–44.  These included several handgun offenses and a shooting.  *Id.* ¶¶ 37, 38, 41, 42, 43, 44.  He received three criminal history points for a 1981 conviction in a New York state court for criminal possession of a controlled substance, for which he was sentenced to 90 months to 15 years of incarceration.  *Id.* ¶ 47.  Dawson was released on parole on April 24, 1989, and his parole was to expire on November 9, 1996.  *Id.*

_____

[10] Under the 1994 Guidelines, as under the Guidelines now in effect, the maximum possible offense level is 43.  *See* U.S.S.G. § 5A (1994); U.S.S.G. § 5A (2023).

Dawson received two additional criminal history points because he committed the instant offenses while on parole.  *Id.* ¶ 49.  In total, Dawson was assessed five criminal history points, which "establishe[d] a Criminal History Category of III."  *Id.* ¶ 50.[11]

The PSR noted that the mandatory minimum sentence with respect to Counts IV and V was life imprisonment.  *Id.* ¶ 55.  In particular, the PSR stated, *id.*:

> Pursuant to 18:USC:1512(a)(2)(A),[12] the penalty for the killing of a federal witness is provided for in 18:USC:1111.  That section states, in part, "Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict by adding thereto 'without capital punishment' in which event he shall be sentenced to imprisonment for life."  Since the Government did not file a notice seeking the death penalty, the mandatory minimum sentence as to both Counts IV and V is life imprisonment.

In addition, the PSR included a section titled "Offender Characteristics."  *Id.* ¶¶ 64–71.  In this section, the PSR noted, *inter alia*, that Dawson's father died when Dawson was three years old, *id.* ¶ 64; that Dawson "entered the . . . Army in 1955 and . . . was [h]onorably [d]ischarged . . . in 1957" after "serving in the infantry in Korea," *id.* ¶ 67; and that Dawson "married the former Bessie [Brown] in 1988," with whom he had one child, Dawson, Jr.  *Id.* ¶ 65.

---

[11] Under the current Guidelines, effective November 2023, Dawson would not be assessed criminal history points for having committed the instant offenses while on parole.  In particular, U.S.S.G. § 4A1.1(e) assesses one additional criminal history point only if a "defendant (1) receives 7 or more [criminal history] points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  This provision would reduce defendant's criminal history category to II.  But, the discrepancy is of no legal significance, because defendant would still be subject to mandatory life imprisonment for having committed murder of a federal witness.  *See* 18 U.S.C. 1512(a)(3)(A); 18 U.S.C. § 1111(b).  Moreover, his offense level of 43 is not affected, and the Guidelines would still call for a life sentence, whether defendant's criminal history category was II or III.

[12] Because of subsequent amendments, the applicable punishment is now described in 18 U.S.C. § 1512(a)(3)(A).

Sentencing was held on February 17, 1995.  *See* ECF 167 ("Judgment") at 1; ECF 372. During the sentencing hearing, defendant denied responsibility for the murder of Latisha Murphy. ECF 372 at 32–33; 36.  He stated, *id.* at 32–33:  "I did not kill anyone.  I did not come down to Baltimore and kill someone."  Judge Nickerson stated, *id.* at 43:

> With respect to the sentencing, and considering all of the sentencing factors under 18 U.S.C. § 3553, I would say that but for the Government's decision in this case not to seek the death penalty, which they were entitled to request, that under the circumstances of this case, it would have been the appropriate sentence.  A more cold-blooded, premediated murder without any mitigating circumstances I cannot imagine.
>
> So, Mr. Dawson, you are obviously unhappy with the result, [but] you should be thankful to the Government that they did not request the death penalty in this case.

As reflected in the Judgment, which was entered on February 23, 1995 (ECF 167), Judge Nickerson sentenced defendant to consecutive sentences, as follows: 240 months of imprisonment with respect to Count One; five years of imprisonment with respect to Count Three; life imprisonment with respect to Count Four; and life imprisonment with respect to Count Five.  *Id.* at 2.

Dawson noted an appeal to the Fourth Circuit.  The Court affirmed his conviction in an unpublished opinion issued on April 21, 1998.  *See Dawson*, 1998 WL 188636.

Dawson, who was born on February 28, 1939, is now 85 years old.  *See* ECF 368 at 1; *Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed May 3, 2024).  He has been incarcerated since March 22, 1994.  ECF 361-1 at 3; *see* ECF 368 at 1.  Dawson is currently housed at the United States Medical Center for Federal Prisoners in Springfield, Missouri.  *See Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/.  While incarcerated, Dawson has committed three relatively minor infractions: "interfering with taking

count," on May 28, 2023; "refusing to obey an order," on April 6, 2022; and "being unsanitary or untidy," also on April 6, 2022.  ECF 361-2 at 1.

## II.     Legal Standard

It is well settled that a court ordinarily "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see United States v. Davis*, 99 F.4th 647, 653, 2024 WL 1662931, at *2 (4th Cir. Apr. 18, 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly *permitted* by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

One statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  This meant that a defendant seeking compassionate release

had to rely on the BOP Director for relief.  *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

However, with the passage of the First Step Act ("FSA") in 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582, by enabling a federal inmate to file a motion for compassionate release directly with the court, as long as the inmate first exhausted administrative remedies.  *See Malone*, 57 F.4th at 173; *United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).  In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *Jenkins*, 22 F.4th at 169; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are met.  *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.  These criteria have

been described as "two steps." *See*, *e.g.*, *Bond*, 56 F.4th at 383.

"First, the court must determine the prisoner is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' supporting relief." *Bethea*, 54 F.4th at 831 (citation omitted); *see Davis*, 99 F.4th at 654; *Bond*, 56 F.4th at 383; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021). If that criterion is met, the court "must then find that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see also Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *Kibble*, 992 F.3d at 330.

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *Jenkins*, 22 F.4th at 169. However, as the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 654.

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When

11

a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts."  As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *Id.* at 284 (citation omitted); *see also Jenkins*, 22 F.4th at 170.

However, effective November 1, 2023, U.S.S.G. § 1B1.13 was amended.  *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)).  The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).  Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A).  *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction").[13]  As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions.  18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

---

[13] Defendant's Motion was filed on November 1, 2023, the effective date of the amendments.

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

The Policy Statement identifies six circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *Id.* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as terminal illness, "serious cognitive impairment," the inability to receive specialized medical care while incarcerated, or the housing of the defendant at a correctional facility affected or at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public heath emergency . . . .", *id.* § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, *id.* § 1B1.13(b)(2); the defendant's family circumstances, *id.* § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, *id.* § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "Limitation on Changes in Law." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not

13

been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[14]

Section 1B1.13(d) of the Policy Statement, which concerns rehabilitation, limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. It provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.*

Even if a defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57

---

[14] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion).  Notably, the recent amendments to the Guidelines did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'"  *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).  As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'"  *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500).  The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor."  *Davis*, 2024 WL 1662931, at *4; *see United States v. Friend*, 2 F.4th 369, 381-82 (4th Cir. 2021).  And, in weighing

the § 3553(a) factors, the court may consider the terms of a plea bargain.  *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said:  "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis."  But, the Court cautioned that "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion.  *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case."  *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190).  And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law."  *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case."  *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021).  For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'"  *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).  In any event, "the court must provide an explanation sufficient 'to

16

allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . . " *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th at 647, is illustrative. The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 661. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III.    Discussion

### A.

Before considering the merits of Dawson's request for compassionate release, I must first determine whether he has exhausted administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).

In the Motion, Dawson's counsel states: "On September 21, 2023, counsel submitted a written request on behalf of Dawson to the Warden's Office at the Medical Center for Federal Prisoners in Springfield, Missouri, asking that BOP move this Court for a reduction of Dawson's sentence under 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 351 at 8. And, counsel indicates that the BOP has not responded to Dawson's written request of September 21, 2023. *See id.* at 9. Counsel asserts: "The lapse of more than 30 days . . . entitles [Dawson], under the amended § 3582(c)(1)(A), to bring his motion directly to this Court . . . ." *Id.*

Counsel did not append to the Motion the defendant's request to the Warden. Nevertheless, the government does not dispute that Dawson has satisfied the requirement of administrative exhaustion. *See* ECF 361. And, the government represented to the Court during the hearing of June 12, 2024, that defendant had submitted, and the BOP had rejected, a request for compassionate release.

Based on the parties' representations to the Court that the exhaustion requirement has been met, I conclude that Dawson has met the requirement of administrative exhaustion. Therefore, I shall consider the merits of defendant's request for compassionate release.

### B.

Dawson asserts that he is eligible for relief under U.S.S.G. § 1B1.13(b)(2), which provides that there is an extraordinary and compelling reason for compassionate release if "[t]he defendant

18

(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *See* ECF 351 at 9.  Notably, the government concedes that Dawson has demonstrated an extraordinary and compelling reason for release under this provision. ECF 361 at 5.

I agree that Dawson's circumstances provide an extraordinary and compelling reason for relief under U.S.S.G. § 1B1.13(b)(2).  Dawson, who is now 85 years old, clearly satisfies U.S.S.G. § 1B1.13(b)(2)(A)'s requirement that a petitioner be "at least 65 years old."  And, Dawson has served more than 30 years of incarceration.  Therefore, he readily satisfies U.S.S.G. § 1B1.13(b)(2)(C)'s requirement that a petitioner have "served at least 10 years or 75 percent" of his term, "whichever is less."

Moreover, I am persuaded by my examination of Dawson's medical records that he "is experiencing a serious deterioration in physical . . . health because of the aging process," in satisfaction of U.S.S.G. § 1B1.13(b)(2)(B).  *See* ECF 351-1; ECF 381.  A "Clinical Encounter" record dated December 22, 2022, indicates that Dawson "is [n]ot safe to ambulate," and "has not walked since . . . 2019."  ECF 351-1 at 18.  The record also reflects that Dawson "requires assistance with all mobility despite PT [physical therapy] intervention."  *Id.* at 19.  Indeed, it appears that Dawson now requires an "Attendant" to "assist[] him with shower[ing]."  *Id.* at 14.

A more recent "Clinical Encounter" record, dated May 16, 2024, indicates that Dawson's ambulatory deficits have not resolved.  In particular, the record states: "He continues to use a wheelchair primarily for ambulation, he self transfers to his wc and then self propels around the ward."  ECF 381 at 6.  The record also reflects that Dawson "want[s] to have a cane for ambulation," but that it is "unclear if this would be safe for him."  *Id.* at 9–10.

19

Dawson's health records also indicate that he is dependent to some extent on a portable oxygen unit.  An "Administrative Note" filed by on December 19, 2022, indicates that Dawson's "oxygen level prior to . . . exercise[] was at 88%."  *Id.* at 20.  But, "[u]pon performing 3 sit to stand[] [exercises] using the railing for support his oxygen level dropped to 70%."  *Id.*  A normal blood oxygen saturation level is between 95 and 100 percent.  *See Blood Oxygen Level*, CLEVELAND CLINIC, https://perma.cc/V6FR-8PL7 (last accessed May 3, 2024).  The "Clinical Encounter" record dated December 22, 2022, states:  "Inmate is finally wearing his portable oxygen and his oxygen saturation are staying [sic] above 94%–98%."  ECF 351-1 at 18.  However, a more recent "Clinical Encounter" record, dated December 1, 2023, suggests that Dawson does not use an oxygen unit except "at night."  ECF 381 at 13.

Further, a BOP record dated May 16, 2024, indicates that Dawson has been diagnosed, *inter alia*, with atrial fibrillation, *id.* at 7; chronic obstructive pulmonary disease, *id.*; "complete loss of teeth," *id.*; high blood pressure, *id.*; high cholesterol, *id.* at 8; obesity, *id.*; osteoarthritis of the hip and knee, *id.*; and glaucoma.  *Id.*  In the Notice of Supplemental Authority (ECF 364), Dawson's counsel states that Dawson "can no longer see out of his eye, and now requires a magnifying glass to read."  *Id.* at 3.

The BOP record dated May 16, 2024, notes that Dawson has received "[p]eripheral vascular angioplasty" with "stents and grafts."  *Id.* at 8.  In particular, the record appears to indicate that in 2021 a femoral-popliteal bypass procedure was performed to address the failure of Dawson's right superficial femoral artery.  *See id.* (noting "02-21 R SFA Angio fail =>Fem/Pop bypass") (italics omitted).  "Femoral popliteal bypass surgery is used to treat a blocked femoral artery," which "is the largest artery in the thigh."  *Femoral Popliteal Bypass Surgery*, JOHNS HOPKINS MEDICINE, https://perma.cc/U482-YQ78 (last accessed May 3, 2024).  In addition, the

record indicates that in 2019 Dawson received a stent in his left superficial femoral artery. ECF 381 at 8 (noting "08-19 L SFA stent").

Given Dawson's inability to walk without assistance, his use of a portable oxygen unit, and his multiple serious and chronic medical conditions, I am satisfied that Dawson has experienced, and continues to experience, "a serious deterioration in physical . . . health because of the aging process," under U.S.S.G. § 1B1.13(b)(2)(B).

Although not cited by defendant, U.S.S.G. § 1B1.13(b)(1)(B) provides an additional basis for relief. Under that provision, there is an extraordinary and compelling reason for relief if a "defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* In my view, Dawson's immobility, difficulty breathing, and significant cardiovascular problems are "serious physical or medical condition[s]" within the meaning of U.S.S.G. § 1B1.13(b)(1)(B). Moreover, there is no basis on which to conclude that Dawson is "expected to recover" from these impairments. *Id.* And, given Dawson's need for help with such a task as basic as showering, I am satisfied that his "ability . . . to provide self-care" is "substantially diminishe[d]." *Id.*

In sum, Dawson has demonstrated an extraordinary and compelling reason for compassionate release under both U.S.S.G. § 1B1.13(b)(2)(B) and § 1B1.13(b)(1)(B). Nonetheless, this determination does not end my inquiry. I must also consider whether compassionate release is consistent with the sentencing factors enumerated at 18 U.S.C. § 3553(a).

Dawson argues that his "personal rehabilitation strongly weighs in favor of a reduced sentence." ECF 351 at 15. He claims that he "has taken a variety of educational classes during his time in prison including classes in computing fundamentals, reading classes, health and

anatomy classes, beading classes, and a legal research class." *Id.* And, Dawson's counsel suggests that Dawson now feels "sincere remorse" and "deep[] regret[]" for his actions. *Id.* at 5. It is troubling that the Court has not been provided with any statement from Dawson reflecting his remorse. His counsel explained at the hearing that Dawson is impaired to such an extent that he is now effectively unable to prepare a statement of remorse. I cannot conclude that this is so, because no evidence of a serious mental impairment has been presented. To the contrary, counsel's focus has been on Dawson's physical health.

With respect to 18 U.S.C. § 3553(a)(2)(C), which directs a court to consider "the need . . . to protect the public from further crimes of the defendant," the Motion submits that "[n]o reasonable person could believe that Dawson, who is 8[5] years old, virtually immobile, and dependent on a portable oxygen tank, poses a danger to any person or the community." ECF 351 at 16.

In the Motion, Dawson's counsel asserts that Dawson has not incurred any disciplinary infractions while incarcerated. *Id.* at 5 ("perfect disciplinary record"); *id.* at 7 ("zero disciplinary infractions"); *id.* at 10 ("spotless disciplinary record"); *id.* at 14 ("literally no disciplinary infractions"); *id.* at 15 ("perfect disciplinary record"); *id.* at 16 ("zero disciplinary infractions"). This is incorrect. As of the time of the Motion's filing, Dawson had incurred three disciplinary infractions, albeit relatively minor ones. *See* ECF 361-2. Nevertheless, given the length of time that defendant has been incarcerated, his disciplinary record is not an impediment to compassionate release.

In the Notice of Supplemental Authority (ECF 364), Dawson asserts: "This Court has recently granted compassionate release in circumstances similar to Mr. Dawson [sic] . . . ." *Id.* at 2. In support of this assertion, the Notice of Supplemental Authority cites three recent opinions,

in which I granted, in part, a defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).  *Id.* (citing *United States v. Samuel*, ELH-16-0117, 2023 WL 8650366 (D. Md. Dec. 14, 2023); *United States v. Taylor*, ELH-12-0570, 2023 WL 8650367 (D. Md. Dec. 14, 2023); *United States v. Eggleston*, ELH-15-0569, 2024 WL 149838 (D. Md. Jan. 12, 2024)).

In the Notice of Supplemental Documentation (ECF 381), Dawson draws the Court's attention to Judge Blake's grant of compassionate release in *United States v. Taylor*, CCB-02-0410, 2023 WL 4407593 (D. Md. Jul. 7, 2023).  The defendant in that case committed an "execution-style" murder of a witness in a state prosecution.  *Id.* at *2.  He was sentenced to life imprisonment without the possibility of release.  *Id.*  Notwithstanding the "utmost severity" of the defendant's offense, Judge Blake concluded that the "§ 3553(a) factors favor[ed] reducing [the defendant's] sentence to thirty-five years."  *Id.* at *6.

In its Opposition, the government argues that, given the seriousness of Dawson's offense, the Court's interest in "provid[ing] just punishment" precludes a grant of compassionate release.  ECF 361 at 6 (quoting 18 U.S.C. § 3553(a)(2)).  In addition, the government asserts that the Court's interest in "promoting respect for the law and adequate deterrence" weighs against compassionate release.  ECF 361 at 7.  The government states:  "[T]he necessity of maintaining a life sentence here for deterrence is all the more important in the current climate of witness intimidation that is all too often seen.  At some point, deterrence demands the line to be held firm."  *Id.*  In addition, the government suggests that granting Dawson's request for compassionate release would be, in effect, a form of parole.  *Id.*  The government exhorts the Court to "resist the invitation to parole [Dawson's] life sentence using compassionate release as the vehicle."  *Id.*

As an initial matter, I am well aware of my decisions in the cases cited by defendant in the Notice of Supplemental Authority.  I am equally aware of just how incomparable the offenses

23

committed by the defendants in those cases are to the offenses for which Dawson is serving two life sentences. *Samuel*, 2023 WL 8650366, at *1 (possession with intent to distribute 100 grams or more of mixtures containing heroin and cocaine, in violation of 21 U.S.C. § 841, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)); *Taylor*, 2023 WL 8650367, at *1 (possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1)); *Eggleston*, 2024 WL 149838, (D. Md. Jan. 12, 2024) (possession with intent to distribute cocaine and ethylone, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)).

As I see it, the offenses in relation to which Dawson is serving consecutive life sentences—namely, the murder of Latisha Murphy to prevent her from testifying or communicating with law enforcement—are among the most serious and egregious that a person can commit. The egregiousness of the murder is compounded by the fact that Dawson committed it in an attempt to thwart the prosecution of his son, Dawson, Jr., for the homicide of a ten-year-old child who was innocently playing outside during an outrageous shootout on a public street. Without a doubt, the "nature and circumstances of the offense" weigh heavily against compassionate release. 18 U.S.C. § 3553(a)(1).

Nonetheless, as illustrated by Judge Blake's grant of relief in *Taylor*, 2023 WL 4407593, even the most heinous offenses do not categorically disqualify a prisoner from receiving compassionate release. And, in my view, given the exceptional circumstances attendant here, compassionate release is consistent with the sentencing factors enumerated at 18 U.S.C. § 3553(a)(2)(A)–(C).

Dawson has served more than 30 years in prison and is now 85 years old. Even after release, it appears that defendant's life will be limited in every respect by his major physical

impairments.  Compassionate release under these circumstances does not diminish the severity of the sentence that Dawson has already served.  Therefore, I am satisfied that Dawson's sentence, even if abbreviated by a grant of compassionate release, adequately "reflects the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

In this regard, it is noteworthy that Dawson's sentence, if reduced to time served, would be equivalent to several more recent sentences received by defendants in this District who committed crimes involving a killing.  *See*, *e.g.*, *United States v. Floyd*, CCB-16-597, ECF 477, ECF 491 (30-year term of imprisonment after conviction of racketeering conspiracy involving murders); *United States v. Antoine*, PWG-19-140, ECF 349, ECF 465 (22-year term of imprisonment after plea of guilty to one count of discharging a firearm resulting in death during a drug trafficking crime); *United States v. Blake*, ELH-06-394, ECF 62, ECF 123, ECF 149, ECF 123, ECF 165 (on motion for compassionate release, sentence reduced from life in prison to 30 years of imprisonment for defendant who committed murder when he was a juvenile).

I am also mindful that, if defendant's sentence is reduced to time served, he will have served a term of incarceration roughly equivalent to the term likely to be served by someone who is sentenced to a 35-year term in prison, and who is awarded the maximum good conduct credit of 54 days per year.  *See* 18 U.S.C. § 3624(b)(1).  By my reckoning, a defendant who has served 30 years of a term of incarceration would receive a maximum of 1,620 days, or roughly 4.5 years, of good conduct credit.  Such a defendant would be eligible for release after serving approximately 30.5 years, which is approximately the amount of time that Dawson has served to date.

With regard to deterrence, I cannot accept the government's contention that a grant of compassionate release will suggest to those who would murder a witness that their crime will

receive anything less than the most severe punishment.  Indeed, Dawson's circumstances well illustrate just how extreme the costs of such a crime can be.  He will be released from prison at age 85, after 30 years of incarceration and in a state of significant disability.  To any person weighing the costs and benefits of an offense similar to Dawson's, the outcome of his prosecution can only show that the costs are very high indeed.  Therefore, I conclude that compassionate release is not inconsistent with the Court's interest in "afford[ing] adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B).

Nor is compassionate release contrary to the Court's interest in "protect[ing] the public from further crimes" committed by Dawson.  18 U.S.C. § 3553(a)(2)(C).  Dawson's significant physical impairments mean that he is unable to walk, shower without help, or exert himself without use of a portable oxygen tank.  A person with such profound disabilities is not likely to pose a threat to the public.

Courts in this Circuit generally consider a defendant's release plan when evaluating the appropriateness of release under 18 U.S.C. § 3553(a).  *See, e.g., United States v. Braxton*, JKB-09-0478, 2022 WL 269180, at *2 (D. Md. Jan. 28, 2022); *Davidson v. United States*, RAJ-18-177, 2023 WL 3998369, at *3 (E.D. Va. June 14, 2023); *United States v. Bailey*, 547 F. Supp. 3d 518, 525 n.8 (E.D. Va. 2021).  In my view, Dawson has presented a satisfactory release plan.

The Motion indicated that, upon release, Dawson plans to live with "a friend of over twenty years, Rose Fayton."  ECF 351 at 16.  In a letter dated September 21, 2023, Ms. Fayton wrote, in part:  "If [defendant] is released, I would be willing to help him financially with food, clothing and basic needs so that he can get on his feet.  I will do anything I can do to help him."  ECF 351-3 at 2.  However, during the hearing of June 12, 2024, Dawson's counsel stated that Ms. Fayton was no longer a suitable candidate to house defendant upon release.  Therefore, by Order of June 14,

26

2024 (ECF 402), the Court directed counsel "to file a submission setting forth the plan for Mr. Dawson if he is released, which should include, *inter alia*, proposed measures enabling defendant's supervision to be transferred to New York." *Id.* at 1.

Dawson's counsel filed the Release Plan on July 1, 2024. ECF 407. It provides that, if Dawson is granted compassionate release, "counsel will ensure that he is released to a facility where he will receive proper medical care—either at a nursing home facility in New York or a transitional housing site run by the nonprofit Housing Works in Queens, New York." *Id.* In support of the Release Plan, counsel submitted a letter to the Court from Danielle Spina, the "Vice President of Justice Initiatives" at Housing Works, Inc. ECF 407-1. This letter provides, in part, *id.* at 2:

> This letter is to verify that Mr. Nathaniel Dawson is currently on the Housing Works Inc. Emergency and Transitional Housing Program waitlist for the Fresh Meadows Queens site located at 61-27 186th Street, Fresh Meadows, NY. We are in communication with Mr. Dawson's legal team and will inform them immediately when a room becomes available.

Counsel states that, "[i]n the event that Housing Works does not have a room for Mr. Dawson upon his release, counsel will work with" Staci Wickersham, the BOP social worker assigned to Dawson's case, "to ensure that he secures a bed at a nursing home such as New York Center for Rehabilitation & Nursing in Queens, New York." ECF 407 at 3. To facilitate Dawson's placement in the Housing Works facility or a nursing home, counsel requests that, if the Court grants compassionate release, it stay the order of release "for up to 30 days to permit counsel to secure a bed at one of the facilities." *Id.* at 2.

With respect to the transfer of Dawson's supervision, counsel states that the probation offices for the District of Maryland and the Eastern District of New York "have confirmed" to counsel "that the anticipated transfer of Mr. Dawson's supervision from the District of Maryland

to the" Eastern District of New York "will be straightforward." *Id.* at 3.  In particular, counsel states that, if the Court grants relief, the probation office for the Eastern District of New York "will verify his release address and confirm that it is a safe and appropriate place for" Dawson to live. *Id.* at 3.  According to counsel, "such investigations can take up to 30 days," but are "typically completed on a shorter timeline in compassionate release cases." *Id.* at 3–4.

The government has not responded to the Release Plan.  *See* Docket.  The Release Plan demonstrates to my satisfaction that compassionate release is consistent with the Court's interest in ensuring that the sentence imposed will "provide the defendant with needed . . . medical care . . . ." 18 U.S.C. § 3553(a)(2)(D).  Moreover, the expected transfer of Dawson's supervision to the probation office in the district in which he will reside is consistent with the Court's obligation "to protect the public from further crimes of the defendant"—who, as noted, is so impaired that any further offenses are, in any event, very unlikely.  18 U.S.C. § 3553(a)(2)(C).

A court modifying a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  In my view, it is appropriate to incorporate the Release Plan's commitment to housing defendant in an appropriate nursing home facility as a term of defendant's supervised release.  Indeed, the Release Plan is central to my ruling, and if defendant were to fail to adhere to it this could vitiate the effectiveness of compassionate release as a means of "provid[ing] defendant with needed . . . medical care." 18 U.S.C. § 3553(a)(2)(D).  Therefore, as a condition of defendant's supervised release, I shall require that, for the duration of defendant's

supervised release, he remain housed at a nursing home or other facility that is able to provide him with appropriate medical care.[15]

Finally, I do not share the government's concern that compassionate release in these circumstances would be parole by another name. Contrary to the government's suggestion, the Court's decision to grant relief is not based on a judgment that Dawson "has paid his debt to society by serving [30] years of a life sentence." ECF 361 at 7. Instead, the Court's decision is based on its conclusion that Dawson's failing health and old age provide an extraordinary and compelling reason for relief under U.S.S.G. § 1B1.13(b)(2)(B), and that relief is consistent with the sentencing factors at 18 U.S.C. § 3553(a).

In short, by granting compassionate release, the Court does not improperly revive federal parole. Rather, it faithfully applies the law of compassionate release, as written by Congress and implemented by the Sentencing Commission.

## IV.    Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 351) and deny the Motion to Expedite (ECF 365), as moot. In particular, I shall reduce Dawson's sentence to time served, plus thirty days. All terms and conditions of the supervised release imposed by the Judgment of February 23, 1995 (ECF 167) shall remain in effect. As an additional term of Dawson's supervised release, I shall require defendant remain housed for the duration of his supervised release at a nursing home or other facility that is able to provide him with appropriate medical care.

A revised Judgment and Commitment shall issue. An Order follows, consistent with this Memorandum Opinion.

---

[15] The Judgment provides for four concurrent ten-year terms of supervised release. ECF 167 at 3.

Date: July 17, 2024

                                              /s/
                                    Ellen Lipton Hollander
                                    United States District Judge